[Civ. No. 22872.   Second Dist., Div. Three.   Oct. 3, 1958.]

CITY OF LONG BEACH, Plaintiff, v. DAGMAR AISTRUP et al., Defendants; COUNTY OF LOS ANGELES, Appellant; VICTOR K. HART et al., Respondents.

Harold W. Kennedy, County Counsel, and Robert A. Von Esch, Jr., Deputy County Counsel, for Appellant.

Hodge L. Dolle and Thomas G. Baggot for Respondents.

VALLÉE, J.—The city of Long Beach brought this proceeding to condemn several parcels of realty. Defendants Victor K. Hart, F. Walter Bergmann, and John Gerald Quirk each owned in fee one of the parcels sought to be condemned. The county of Los Angeles was named a defendant as it claimed that by reason of liens for taxes for the tax years

1955-56, 1956-57, and 1957-58 it had an interest in various parcels, including those of Hart, Bergmann, and Quirk. An interlocutory judgment was entered on June 5, 1957, and the award was deposited in court. Final order of condemnation was entered July 10, 1957.

The issue here is the amount, if any, the county of Los Angeles is entitled to receive from the award for taxes.

On December 22, 1955, an order was made authorizing plaintiff to take immediate possession and use of the Hart parcel. On February 28, 1956, plaintiff took actual possession of that parcel, demolished all improvements on the property, and immediately thereafter constructed extensive public improvements thereon. Hart paid the first installment of taxes for 1955-56, consisting of half the amount levied for that fiscal year. No taxes were paid for the second half of 1955-56 or for 1956-57 or 1957-58. The trial court apportioned the second installment for 1955-56 to February 28, 1956, the date plaintiff took possession, and denied the county's claim for the tax years 1956-57 and 1957-58. The judgment provides that the county shall receive from the award that part of the second installment of 1955-56 taxes that the period of time from January 1, 1956 to February 28, 1956 (the date of actual possession by plaintiff) bears to the period of time from January 1, 1956 to June 30, 1956, and that no taxes shall be deducted from the award for the fiscal years 1956-57 and 1957-58.

On April 29, 1955, pursuant to the court's order of that date, plaintiff took actual possession of the Bergmann parcel and removed or demolished all improvements on the property and immediately thereafter constructed extensive public improvements thereon. No taxes were paid for the tax years 1955-56, 1956-57, or 1957-58. The trial court denied the claims of the county for taxes for those years for the reason that plaintiff went into possession prior to the beginning of the 1955-56 fiscal year.

On March 9, 1956, pursuant to order therefor, plaintiff took actual possession of the Quirk parcel and immediately removed or demolished all improvements on the property and immediately thereafter constructed extensive public improvements thereon. Quirk paid the first installment of the taxes for 1955-56. The second installment was not paid. No taxes were paid for the tax years 1956-57 or for 1957-58. The trial court apportioned the second installment of taxes for the tax year 1955-56 and denied the county's claim for the tax years

1956-57 and 1957-58. The judgment provides that the county shall receive from the award that part of the second installment of 1955-56 taxes that the period of time from January 1, 1956 to March 9, 1956 (the date of actual possession by plaintiff) bears to the period of time from January 1, 1956 to June 30, 1956, and that no taxes shall be deducted from the award for the fiscal years 1956-57 and 1957-58.

On the first Monday in March 1955, 1956 and 1957 taxes of the county of Los Angeles for the fiscal years 1955-56, 1956-57, and 1957-58, respectively, became a lien on the properties of defendants Hart, Bergmann, and Quirk. By November 1 of 1955, 1956, and 1957 assessment of the properties had been made and the taxes for each fiscal year had been levied.

The county appeals from those parts of the interlocutory judgment which in effect deny its claims for all the unpaid taxes for the fiscal years 1955-1956, 1956-1957, and 1957-1958.

The questions are these:

1. In a proceeding in eminent domain where the condemner is a tax-exempt public corporation, does the taking of possession by the condemner prior to the date of attachment of tax liens render such property tax-exempt?

2. In a proceeding in eminent domain where the condemner is a tax-exempt public corporation, may real property taxes be apportioned to the date of taking of possession by the condemner when such taxes became a lien on the property prior to the date of taking possession?

The county asserts that in all proceedings in eminent domain by a tax-exempt public corporation it is the date of actual passage of title to the condemner, and not the date of taking of possession, which determines the tax status of the property. Section 1253 of the Code of Civil Procedure provides that the property condemned shall vest in the plaintiff on the filing of a copy of the final order of condemnation in the office of the recorder of the county.

In all cases of taxation of realty a lien attaches annually as of noon on the first Monday in March preceding the fiscal year for which the taxes are levied. (Rev. & Tax. Code, §§ 2187, 2192.) Between the lien date and the first Monday in July the assessor must assess all taxable property. (Rev. & Tax. Code, § 405.) Subsequently the taxes are levied against the property. The levy usually occurs in September of each year. The first installment of such taxes is due on November 1 following the levy, and the second installment is

due on February 1 of the year following. (Rev. & Tax. Code, §§ 2605, 2606.)

■ When a condemner obtains an order for possession of property sought to be condemned prior to judgment and actually takes possession of the property, evicting the owners therefrom, such action constitutes a "taking" as of the date the condemner goes into actual possession. In *People* v. *Joerger*, 12 Cal.App.2d 665 [55 P.2d 1269], quoted from with approval in *People* v. *Peninsula Title Guar. Co.*, 47 Cal.2d 29, 32 [301 P.2d 1], the condemner went into possession pursuant to an order therefor prior to judgment and performed extensive work upon the premises. The Joergers were the owners at the time the condemner went into possession, but at the time the final order of condemnation was entered the purchaser at a trustees' sale was the owner. The trial court ordered the award which the condemner had paid into court to be paid over to the purchaser at the trustees' sale. Reversing, with directions that the award be paid to the Joergers, the court stated (p. 670):

"In the ordinary proceeding the property is not 'taken' until the final decree is entered. (Code Civ. Proc., § 1253.) It is the divesting of the title of the owner and the vesting of the title in the condemnor which constitutes the 'taking' in such cases. But where, as under *our* Constitution, provision is made for a 'taking' prior to the divestiture of title, the party who owns the property at the time of such 'taking' is entitled to the compensation, under the universal rule found in Corpus Juris, and to which we have referred.

"It thus appears that where there is no prior physical 'taking,' the property is deemed to have been 'taken' when title is divested, as possession follows the title. Where there has been a prior physical 'taking,' the subsequent divestiture of title is merely a confirmation of the original 'taking.' The effect of the constitutional amendment was merely to accelerate the 'taking.' To hold otherwise would, in effect, nullify that provision of the Constitution which provides that 'private property shall not be taken or damaged for public use without just compensation having been first made or paid into court for the *owner.*' As appellants were the owners of the property when it was so 'taken,' they are entitled to the award."

We are of the opinion that *People* v. *Peninsula Title Guar. Co., supra,* 47 Cal.2d 29, is decisive of the first question. In a proceeding in eminent domain the state acquired for highway purposes a parcel of realty in San Mateo which had been

owned by the defendants Arthur. The judgment awarded $25,500 to the Arthurs and to the tax collector of San Mateo "as their interests may appear." The state paid the full amount into court. Later the court ordered that $612.20 be paid from this fund to the city to satisfy a claimed assessment lien against the property. The proceeding, which culminated in the assessment lien asserted against the Arthurs' property, was commenced by San Mateo in 1952 pursuant to the Municipal Improvement Act of 1913 (Sts. & Hy. Code, §§ 10000 et seq.) for the purpose of completing a drainage project affecting and benefiting the lands involved. The assessment was a special benefit assessment. On April 20, 1953, an order was made authorizing the state to take immediate possession. On June 21, 1953, the owners were required to vacate, and the state commenced the removal of buildings and the construction of an overpass thereon. On August 19, 1953, San Mateo recorded its special benefit assessment lien against the property. Judgment was entered on December 2, 1953. Holding that the assessment lien became effective after the Arthurs were deemed to have been divested of their rights in the property and that they were entitled to compensation without reduction on account of the assessment lien, the court stated (p. 31):

"The theory on which the trial court ordered payment of the city's assessment out of the award was that such an assessment is a levy on the interest of the owner; that title to the property does not pass in a condemnation proceeding until judgment is entered and recorded (Code Civ. Proc., § 1253); that the mere taking of possession of land prior to judgment pursuant to the provisions of article I, section 14 of the Constitution does not accelerate the passing of title; that the title was therefore in the Arthurs at the time the assessment was levied, and that the lien attached to the award in condemnation. . . .

"[P. 32.] In situations where it can be said that in addition to a mere taking of possession by the condemnor there is also such a substantial change in the status of the land taken and the condemnee's relation to it as to constitute, in effect, a divestiture for all practical purposes of all of the former owners' interest, the strict rule should not apply. . . .

"[P. 33.] It should be clear from the foregoing that a distinction is drawn between the legal effect of passage of title and the 'taking' of the property involved. There is no passage of title in condemnation proceedings until an award

has been made and the final judgment in condemnation filed in the office of the county recorder. (Code Civ. Proc., § 1253; *Metropolitan Water Dist.* v. *Adams,* 16 Cal.2d 676 [107 P.2d 618].) However, as an exception to the strict application of the law, it is recognized that a 'taking' of sufficient consequences is deemed to have the same effect of finality of transfer for specific purposes as does the passage of title. . . .

"[P. 34.] It is also claimed by the city that here the acts of appropriation of the land by the state were not final and conclusive; that the state could restore the lands to their original status which would not have been possible in the Joerger case. In the present case it appears from an agreed statement of facts that pursuant to the order for possession the state 'acting through the Department of Public Works took possession of the real property . . . and required the appellants to remove themselves from the premises. Immediately thereafter the State removed the buildings which had belonged to the appellants and started construction on additions to Bayshore Highway.'

"There is no justification for a holding that the test of 'taking' is whether the lands thereafter may be restored to their original condition. In *Steinhart* v. *Superior Court, supra,* 137 Cal. 575 [70 P. 629, 92 Am.St.Rep. 183, 59 L.R.A. 404], the court held that there would be a taking where the condemnor exercised a right to 'take posession of and use the land and premises sought to be condemned, during the pendency and until the final conclusion of the proceedings.' In any event it appears in the present case that the dispossession of the defendants and the acts of appropriation, destruction and damage brought about by the state prior to judgment constitute a 'taking' as contemplated by the constitutional provision."[1]

The county seeks to distinguish the Peninsula case from the present one on the ground the lien in that case was for a special assessment rather than for general taxes. There is no difference in result between a lien on property for a special assessment benefit which cannot be enjoyed and a lien for general taxes on property which likewise cannot be enjoyed. It is well settled in this state that liens for general taxes

[1]Also see *In re Mayor etc. of City of New York,* 59 App.Div. 603 [69 N.Y.S. 742], aff. 167 N.Y. 627 [60 N.E. 1116]; *Newman* v. *Blake & Knowles etc. Wks.,* 41 App. D.C. 449; *State* v. *Floyd,* 204 N.C. 291 [168 S.E. 222]; *Milmar Estate, Inc.* v. *Borough of Fort Lee,* 36 N.J. Supp. 241 [115 A.2d 592]; anno: 45 A.L.R.2d 522, 527.

and liens for special assessments stand on an equal footing before the law. (*Elbert, Ltd.* v. *Nolan,* 32 Cal.2d 610, 613 [197 P.2d 537].)

In the case at hand, in addition to a mere taking of possession by the condemner, there was also such a substantial change in the status of the land taken and the condemnees' relation to it as to constitute, in effect, a divestiture for all practical purposes of all of the former owners' interest.

The takings in each instance were of sufficient consequences to be deemed to have the same effect of finality of transfer for specific purposes as does the passage of title. The lands condemned were improved with substantial buildings and other improvements. Immediately on the taking of possession the city of Long Beach in each instance commenced to, and did, demolish and remove all of those improvements and immediately thereafter constructed extensive public improvements thereon.

It will be noted that in *Peninsula* the assessment lien became effective after the condemnees were deemed to have been divested of their rights in the property by the taking of possession by the condemner and that as a consequence the condemnees were entitled to compensation without deduction on account of the assessment lien. Thus, *Peninsula* disposes of the county's contention with respect to the instances at bar in which the liens for taxes became effective after the condemner took possession. The tax lien on the Hart and Bergmann properties with respect to the fiscal years 1956-1957 and 1957-1958 became effective after they are deemed to have been divested of their interests in the properties, and they were entitled to compensation without deduction on account of taxes for those years. The tax lien on the Quirk property with respect to the fiscal year 1957-1958 became effective after he is deemed to have been divested of his interest in the property, and he was entitled to compensation without deduction on account of the taxes for that year.

There remains the question whether taxes which became a lien prior to the date the condemner took possession are to be deducted from the compensation awarded. We are cited to numerous authorities expounding various theories on the question.

In some jurisdictions it is held that the lien is not effective until the levy is made, and that if title passes in eminent domain before the levy the property is not subject to

taxation.[2]   Some authorities hold that passage of title is deemed to occur on the filing of the petition to condemn on the theory that title, when vesting, relates back to the time of the filing of the petition.[3]   Other authorities hold that a grantor-grantee relation exists between the condemnee and the condemner, and the law has been applied accordingly in determining rights with respect to apportioning real property taxes.[4]

In a few cases the question has arisen as to whether real property taxes for the year in which the property was taken should be apportioned, with the award or the condemnee liable for the taxes in the ratio that the part of the year passing prior to the vesting of title bore to the whole year, but not for the whole year's taxes. Under some statutes it has been held that taxes should be thus apportioned.[5]   Many other cases hold that the taxes may not be apportioned so as to make the award liable only for that proportion of the tax year which preceded the date title passed or was deemed to have passed.[6]

---

[2]*State* v. *Snohomish County,* 71 Wash. 320 [128 P. 667]; *City of Portland* v. *Multnomah County,* 135 Ore. 469 [296 P. 48, 49], overruled in *City of Salem* v. *Marion County,* 171 Ore. 254 [137 P.2d 977]; *Territory* v. *Perrin,* 9 Ariz. 316 [83 P. 361, 362]; *State* v. *Locke,* 29 N.M. 148 [219 P. 790, 791-4, 30 A.L.R. 407]; *City of Laurel* v. *Weems,* 100 Miss. 335 [56 So. 451]; *Gachet* v. *City of New Orleans,* 52 La.Ann. 813 [27 So. 348, 349].

[3]*Chicago Park Dist.* v. *Downey Coal Co.,* 1 Ill.2d 54 [115 N.E.2d 223]; *Sherwin* v. *Wigglesworth,* 129 Mass. 64.

[4]*Petition of City of Seattle,* 43 Wn.2d 445 [261 P.2d 416]; *Independent-Consolidated School Dist.* v. *Waldron,* 241 Minn. 326 [63 N.W.2d 555]; *Allen* v. *Henshaw,* 197 Okla. 123 [168 P.2d 625].

[5]*Rutsen Estates* v. *Hudson County,* 102 N.J.L. 265 [131 A. 637]; *Borough of Edgewater* v. *Corn Products Refining Co.,* 136 N.J.L. 664 [57 A.2d 39]; *Yara Engineering Corp.* v. *Newark,* 136 N.J.Eq. 453 [42 A.2d 632]; *United States* v. *266.25 Acres of Land* (D.C.S.C.), 43 F.Supp. 633; *United States* v. *Certain Land in City of St. Louis, Mo.* (D.C.Mo.), 29 F. Supp. 92; *Fishel* v. *City and County of Denver,* 106 Colo. 576 [108 P.2d 236].

[6]*United States* v. *Certain Parcels of Land in Philadelphia* (3 Cir.), 130 F.2d 782; *United States* v. *Alberts* (D.C. Wash.), 55 F.Supp. 217; *St. Louis Provident Ass'n* v. *Gruner,* 355 Mo. 1030 [199 S.W.2d 409]; *United States* v. *Certain Lands, etc.* (D.C. Wis.), 49 F.Supp. 225; *United States* v. *909.30 Acres of Land, etc.* (D.C. N.D.), 114 F.Supp. 756; *United States* v. *Certain Parcels of Land* (D.C. Cal.), 44 F.Supp. 936; *Collector of Revenue* v. *Ford Motor Co.,* (8 Cir.) 158 F.2d 354; *United States* v. *Certain Lands* (D.C. Mo.), 69 F.Supp. 565; *United States* v. *Certain Land* (D.C. Mo.), 86 F.Supp. 297; *United States* v. *44,549 Square Feet of Land* (D.C. N.Y.), 41 F.Supp. 523; *People of Puerto Rico* v. *Palo Seco Fruit Co.* (1 Cir.), 136 F.2d 886; *United States* v. *State of Alabama,* 313 U.S. 274 [61 S.Ct. 1011, 85 L.Ed. 1327]; *Thibodo* v. *United States* (9 Cir.), 187 F.2d 249; *United States* v. *Certain Parcels*

■ It is the general rule that the subjection of the award in a proceeding in eminent domain to the payment of real property taxes depends on whether such taxes became a lien prior or subsequent to the time title passed or is deemed to have passed. (See cases collected 45 A.L.R.2d 529, 555.) The majority view is that where the taxes became a lien prior to the passage of title or prior to the time title is deemed to have passed to the condemner, they are to be deducted from the award. (Anno: 45 A.L.R.2d 529, 555.)

The variations reached in different jurisdictions seem to be due in large part to the variances in the applicable statutes. The answer to the second question at bar depends on the effect of the California statutes.

"Generally, the statutes [in this state] regulating eminent domain procedure make it evident that the lien holder's interest should be protected in some manner." (*Wilson* v. *Beville,* 47 Cal.2d 852, 855 [306 P.2d 789].) Revenue and Taxation Code, section 2186, reads: "Every tax has the effect of a judgment against the person."

Section 2187 reads: "Every tax on real property is a lien against the property assessed."

As we have seen, all tax liens attach annually as of noon on the first Monday in March preceding the fiscal year for which the taxes are levied. (Rev. & Tax. Code, § 2192.) Section 2193 reads: "Every lien created by this division has the effect of an execution duly levied against the property subject to the lien."

Section 2194 reads: "Except as otherwise provided in this chapter, the judgment is satisfied and the lien removed when, but not before,

"(a) the tax is paid or legally canceled or,

"(b) for nonpayment of any taxes, the property is sold to a private purchaser or deeded to the State."

■ The lien attaches on the first Monday of March regardless of the date the assessment is made; the later fixation of the amount of taxes by levy and assessment is but a step in the enforcement of an already established lien. (*County of San Diego* v. *County of Riverside,* 125 Cal. 495, 500 [58 P. 81]; *Couts* v. *Cornell,* 147 Cal. 560, 564 [82 P. 194, 109 Am.St.Rep. 168]; *In re Knox-Powell-Stockton Co.,* (9 Cir.)

of Land, etc. (D.C. Md.), 61 F.Supp. 164; *United States* v. *412.715 Acres of Land* (D.C. Cal.), 60 F.Supp. 576; *United States* v. *150.29 Acres of Land, etc. in Milwaukee County, Wis.* (7 Cir.), 135 F.2d 878. See 2 Ops. Atty. Gen. 103.

100 F.2d 979, 983.) When the amount is ascertained it relates back to the time the lien is fixed. (*Estate of Backesto,* 63 Cal. App. 265, 270 [218 P. 597].) ▮ The lien constitutes an encumbrance on the title to the land. (Civ. Code, § 1114.) It is security for the payment of the tax and the enforcement of the property owner's obligation to pay the tax arising on the lien date. (*East Bay Municipal U. Dist.* v. *Garrison,* 191 Cal. 680, 692-693 [218 P. 43]; *County of San Diego* v. *County of Riverside,* 125 Cal. 495, 500 [58 P. 81].) ▮ A property tax operates in rem against the property. (*Helvey* v. *Sax,* 38 Cal.2d 21, 24 [237 P.2d 269].)

In *City of Santa Monica* v. *County of Los Angeles,* 15 Cal. App. 710 [115 P. 945], the court held that property acquired by the city after the lien date but prior to the levy and assessment was not exempt from taxation as the lien attached on the first Monday in March. The court stated (p. 712): "[A] lien declared by positive statute is not dependent for its existence upon subsequent acts requisite to its enforcement."

In *County of San Diego* v. *County of Riverside,* 125 Cal. 495 [58 P. 81], the court held that although the right of the county of San Diego to the payment of certain taxes assessed on railroad tracks did not accrue until a valid assessment had been made, the right to taxes arose on the lien date. The court stated (p. 500):

"The lien for the taxes justly leviable upon the property of a railroad company attaches on the first Monday of March in each year, and the obligation to pay necessarily accrues at the same time, if not earlier. Payment is not due, of course, until the assessment has been made; but when that has been done and the amount of the tax ascertained, it is payable to the county in which the roadbed was included at the time when the lien attached."

▮ Where the award in a proceeding in eminent domain is paid into court, the lien attaches to the award and is removed from the condemned land. (*Wilson* v. *Beville,* 47 Cal.2d 852, 855 [306 P.2d 789]; *Pomona College* v. *Dunn,* 7 Cal.App.2d 227, 232 [46 P.2d 270].) The lien remains a vested interest in the award, which interest must be determined by the trial court. (*City of Vallejo* v. *Superior Court,* 199 Cal. 408, 416-418 [249 P. 1084, 48 A.L.R. 610].) After the amount of award has first been determined, the court is empowered in the same proceeding to determine the respective rights of the defendants having divided interests in

the property and to apportion the award accordingly. (Code Civ. Proc., §§ 1246.1, 1247, subd. 3.)

We have no law which authorizes the division of the annual lump-sum taxes where the lien attaches prior to the date title passes or is deemed to pass. Section 1248, subdivision 1 of the Code of Civil Procedure provides in part that the court must ascertain and assess the value of each and every separate estate or interest in the property sought to be condemned. Section 1246.1 directs the court to apportion the award in accordance with the ''respective rights'' therein. (Also see Code Civ. Proc., § 1248, subd. 8.) The effect of the statutes, mandatory in their terms, is to direct payment to a lienor from the award of the full value of his separate estate or interest in the property condemned.

The statutory scheme would seem to leave no doubt that it was the intention of the Legislature to prevent a lien which attached on the first Monday in March of any year from being extinguished by reason of the fact that after the lien has attached title to the property passes or is deemed to pass to a tax-exempt public corporation in a proceeding in eminent domain. The obligation to pay the taxes accrues the date the lien attaches. The lien has the effect of a judgment and of an execution duly levied. The judgment is not satisfied or the lien removed until the tax is paid or legally canceled. The lien attaches to the award in the proceeding in eminent domain. A levy of an execution results in the creation of a legal right to subject the debtor's interest in the property to the satisfaction of the debt of his judgment creditor, to the exclusion of others whose rights are inferior. (19 Cal.Jur.2d 449, § 81.) The purpose sought to be accomplished by the Legislature is clear and we must give effect to it.

Respondents cite *Yara Engineering Corporation* v. *City of Newark*, 136 N.J. Eq. 453 [42 A.2d 632], and *Fishel* v. *City and County of Denver*, 106 Colo. 576 [108 P.2d 236], in support of their claim that the court properly apportioned the taxes which became a lien prior to the time title is deemed to have passed. These are two of the few cases holding that the taxes should be apportioned from the date the condemner takes possession.

Respondents contend that between the condemnee and the taxing agency the taxes which were a lien prior to the time title is deemed to have passed should be considered

canceled under section 4986 of the Revenue and Taxation Code.[7] The contention is without merit. The procedure prescribed by the statute was not followed. No application for cancellation was ever filed. *County of San Diego* v. *United States*, (9 Cir.) 251 F.2d 534, cited by respondents, is not in point. In that case the condemner applied for cancellation. The application was denied. The county of San Diego then sought to satisfy its tax lien from the award in condemnation. The court held the taxes were in fact canceled; that application to cancel having been made, the board of supervisors and the district attorney had no alternative but to cancel the taxes. (*City of Los Angeles* v. *Ford,* 12 Cal.2d 407 [84 P.2d 1042]. *Cf. United States* v. *State of Alabama,* 313 U.S. 274 [61 S.Ct. 1011, 85 L.Ed. 1327].)

▆▆ We conclude that with respect to the taxes as to which a lien attached prior to the time title is deemed to have passed, the full amount of the taxes must be paid from the award.

The parts of the judgment appealed from are reversed for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

Shinn, P. J., and Wood (Parker), J., concurred.

---

[7]Revenue and Taxation Code, section 4986, in part reads: "All or any portion of any uncollected tax, penalty, or costs, heretofore or hereafter levied, may, on satisfactory proof, be canceled by the auditor on order of the board of supervisors with the written consent of the district attorney if it was levied or charged: . . .

"(e) On property acquired after the lien date by the State or by any county, city, school district or other political subdivision and because of this public ownership not subject to sale for delinquent taxes, and on property annexed after the lien date by the city owning it. . . .

"(g) On personal property or improvements assessed as a lien against real property acquired after the lien date by the United States of America, the State or by any county, city, school district or other political subdivision which because of this public ownership is not subject to sale for delinquent taxes."