[Civ. No. 23955.   Second Dist., Div. One.   Nov. 10, 1959.]

THE PEOPLE, Respondent, v. JESS F. WATKINS et al., Appellants.

Gray, Glass & Allen for Appellants.

Lloyd A. Bulloch, City Attorney (Compton), and Anson, Gleaves & Dowds for Respondent.

LILLIE, J.—An action to abate a nuisance resulted in the lower court's judgment enjoining defendants from maintaining a certain building within 50 feet of the center line of Compton Boulevard, and ordering them to remove the same.
Certain sections of the Municipal Code of the City of

Compton established a building set-back line 50 feet from the center of the street along the south side of Compton Boulevard at the location of a lot owned by defendants; and prohibited the construction of any structure within the 50-foot area. In 1956, defendants built on their lot a one-story frame building, which since its completion they have used as an insurance, real estate and income tax office. The northerly 7 feet of this structure constituting the front portion of the building extends into the prohibited set-back area.

The trial court found that this 7-foot encroachment interferes with the ability of motorists driving easterly along Compton Boulevard to see beyond to the next intersection, creating a public danger to both vehicular and pedestrian traffic; and obstructs light, air and visibility to and from adjacent properties in different prior ownership, constituting a continuing public nuisance.

In March, 1957, the city of Compton filed an action to condemn an easement for street purposes to widen and improve Compton Boulevard. Included in the land to be taken was the encroaching portion of the building lying within the set-back line of the defendants' property. On October 18, 1957, an order for immediate possession was issued by the superior court giving the city the right to enter upon the property over which it proposed to acquire the easement. Pursuant thereto, a curb was constructed by the city but defendants continued to use and occupy the entire building including the encroaching front portion thereof, and are presently doing so. The condemnation proceeding is still pending.

Appellants contend that the city of Compton, through acts of its employees, is estopped from enforcing the set-back ordinance against them; and the order for immediate possession in the eminent domain proceeding relieved them from the duty of abating any nuisance upon the land.

■ While the pleadings in the trial court did not actually raise the issue of estoppel, and ordinarily ''(I)t is too late to attempt to invoke an estoppel as a defense to an action, for the first time, on appeal'' (*Sinai* v. *Mull,* 80 Cal.App.2d 277, 284 [181 P.2d 924] ; *Medeiros* v. *Cotta,* 134 Cal.App.2d 452 [286 P.2d 546]), the evidence upon which it was based was admitted without objection and therefore the necessity for pleading it, if such necessity existed, was waived. (See *Foster* v. *Fisher,* 44 Cal.App.2d 33, 37 [111 P.2d 935]) (*Robison* v. *Hanley,* 136 Cal.App.2d 820, at p. 824 [289 P.2d 560] ; *Pacific Finance Corp.* v. *Foust,* 44 Cal.2d 853 [285 P.2d 632]). And

although at the outset of the trial the parties by stipulation attempted to limit the issue to whether the building constitutes a public nuisance, it is obvious from the record that the defense of estoppel was actually litigated, evidence thereon was received without objection, the action was tried upon the implied theory that it was not necessary to plead the facts relied upon as constituting an estoppel, and the query "whether or not there can be an estoppel against a Municipal Government" was submitted to the trial judge and argued by counsel with citation of authority.

It is well settled that the existence of an estoppel is a question of fact for the trial court, and ordinarily its decision that an estoppel has not been made out is binding on appeal, "unless the opposite conclusion is the only one which can reasonably be drawn from the facts . . ." (*Pacific Gas etc. Co.* v. *State Board of Equalization,* 134 Cal.App.2d 149, at page 156 [285 P.2d 305]; *John Paul Lumber Co.* v. *Agnew,* 125 Cal.App.2d 613, 623 [270 P.2d 1044]; *City of Sacramento* v. *Jensen,* 146 Cal.App.2d 114 [303 P.2d 549]). It is conceded that no specific finding of the matter of estoppel was made by the trial court; but it is apparent from its findings and conclusions (that the existence of the 7-foot portion of defendants' building within the set-back area in violation of the city ordinance constitutes a public nuisance, and nothing in the order for immediate possession in the eminent domain proceedings relieves defendants from their responsibility for the maintenance of the offending portion as a continuing nuisance) that the trial judge must necessarily have passed upon the issue of estoppel; and by finding in favor of plaintiff the lower court impliedly found against defendants on that issue. Under the circumstances we construe in the trial court's findings of fact an implied finding that the facts relied upon by defendants were not sufficient to constitute the defense of estoppel. (*Fair Oaks Bank* v. *Johnson,* 198 Cal. 196, 203 [244 P. 335].) Reviewing the record before us, we cannot say that an "opposite conclusion" is the only one which could be reasonably drawn from the evidence.

Urging an estoppel against the city, appellants rely chiefly upon the testimony of their draftsman that, before submitting their plan to the city, he called on the telephone a "Mr. Newton" of the building and safety department and asked him "what was the set-back in the building line to the property line if one existed," to which he replied "that on commercial property there is no set-back from the property

line"; and on evidence that a building permit was issued and the plans were approved by the city of Compton, and that although there were seven routine visits by a city inspector during the first part of the construction, no complaint was made by him.

However, the entire record shows considerable conflict on the point whether an estoppel in fact exists, which the lower court no doubt used as its basis for denying defendants the equitable relief estoppel affords. That it was justified in doing so appears from defendant Watkins' own testimony that from the very beginning, long before construction began, defendants knew, or were put on reasonable notice, of the existence of the set-back line; and that with full knowledge that the structure violated the municipal ordinance, they refused to obey the city's stop-notice and completed the building. His testimony discloses that at the time he initially discussed preparation of the plans for the building, particularly with respect to its location on the ground, he was aware of the set-back line along Compton Boulevard by virtue of an item in his policy of title insurance stating "on Lemon Street (Compton Boulevard) there was certain set-back or something to that effect." He requested his draftsman to check the matter; but over and above the one telephone conversation the latter had with a Mr. Newton (who was not called by defendants as a witness), neither defendant Watkins nor the draftsman, nor anyone on their behalf, made inquiry of any kind or any effort to determine set-back requirements of the municipal ordinance as they applied to defendants' land. Additionally, in signing his building application (Exhibit A), defendant Watkins specifically agreed to comply with all city codes and state laws regulating building construction; and the building permit (Exhibit H) issued to him stated that the work was to be done subject to all rules and regulations of the municipal code. As urged by them, their plans *were* approved by the city on August 15, 1956, but at the time, appellants were specifically advised by the city (Exhibit B) that its stamping of the plan and specification "shall not be said to permit or to be an approval of the violation of any provision of any city ordinances or state law." The evidence further shows that within a few days, defendants started construction and when the building had not yet been stuccoed and plastered and the glass had not yet been put in, a city official informally advised defendants they were building out too far; and the next day, October 16, 1956, the city

building department issued to them a notice to comply (Exhibit F), advising them of the violation and that the construction must comply with the municipal code. Defendants ceased building operations for the next two months, during which they tried to negotiate the matter with the city, but failing, resumed construction and completed the building in violation of the ordinance.

Finding nothing in the record before us to justify a reversal of the trial court's implied finding of fact which supports the judgment denying defendants the equitable relief of estoppel, we refrain from discussing the issue whether an estoppel may be invoked against a public body.

■ Appellants' second contention that the judgment is against the law in that the effect of the order for immediate possession in the eminent domain proceeding was to transfer the right to possession to the city, and "the appellants from whom possession was taken cannot be ordered to abate any nuisance upon the land taken," is not only wholly unsupported by any authority, but is predicated upon the erroneous assumption not borne out by the record, that the city took possession of the property. This is mainly a factual issue upon which the trial court found against the defendants, making a specific finding that the city did not at any time take physical possession of the offending premises. We hold that the finding is amply supported by the evidence.

On October 18, 1957, an order for immediate possession was issued by the superior court in the city's condemnation action against defendants, giving it the right to enter upon their property, over which it proposed to acquire the easement. This included the 7-foot encroaching front portion of the building lying within the set-back line. Pursuant to the order the city removed the sidewalk and constructed a curb along the north edge of defendants' property. To permit this work to be done, it removed a detachable outdoor glass-louvre screen from a position in front of defendants' building; but the exterior of the building itself was never disturbed except for a part of the downspout of the roof drain at the foot of the front of the building. No portion of the interior of the building was affected by the work. No further work was done and the premises otherwise remained the same. Continuously, immediately after the date of the order for immediate possession, to and including the present time, except for approximately two months in early 1958 during which they voluntarily ceased using the front door after income

tax season, defendants have had full use and enjoyment of the building, including the encroaching front portion, as an office. From the time the front door was reopened after the two months, to the present time, the building has been open, in full use, and is still being occupied, used and enjoyed in its original condition by defendants.

We are aware of no authority in support of appellants' claim that under the circumstances here involved they cannot be ordered to abate the nuisance upon their land. Actually they own the land under condemnation until they are divested of title; they enjoy the fruits of its possession and are responsible for what they place on it. Section 1254, Code of Civil Procedure, specifically provides that when the court's final order of condemnation is filed in the office of the county recorder, title to the property described therein shall vest in the plaintiff, and normally property subject to condemnation proceedings is not "taken" until the final decree is entered. In such cases it is the divesting of title of the owner and the vesting of title in the condemnor which constitutes the "taking." However, in the instant situation an order of immediate possession was made under article I, section 14, California Constitution, which authorizes a "taking" of immediate possession in an action in eminent domain under certain circumstances prior to judgment; but there appears to be no provision in our law for the vesting of title in the condemnor, or for a change of actual physical possession to it, upon the mere issuance of an order of immediate possession in advance of judgment, although it is clear that such an order under article I, section 14, confers the *right* to take physical possession. A search has revealed no authorities dealing directly with the issue before us but, we believe, from the holdings in various cases on related points that until defendants are divested of title to their land or are deprived of actual physical possession of the premises, they are responsible for what they construct thereon, especially if they continue full unhampered enjoyment, use and occupancy of the same. The problem of the effect of a "physical taking" under an order of immediate possession prior to recordation of final judgment and divestiture of title, has frequently arisen out of the issue of who is entitled to compensation under such circumstances, and the courts have held that the divestiture of title, upon the filing of the final judgment with the county recorder, confirms the original "taking" and the owners of the title at the time of the original "taking" are entitled to the

award. Said the court in *People* v. *Joerger*, 12 Cal.App.2d 665, at page 671 [55 P.2d 1269] : "It thus appears that where there is no prior physical 'taking,' the property is deemed to have been 'taken' when title is divested, as possession follows title. Where there has been a prior physical 'taking,' the subsequent divestiture of title is merely a confirmation of the original 'taking.' " In *People* v. *Peninsula Title Guaranty Co.*, 47 Cal.2d 29 [301 P.2d 1], cited by appellants to the effect that the act of a condemnor entering into possession of private property and proceeding to commence construction thereon was a "taking," the Supreme Court, for the purpose of preventing a subsequent tax lien from attaching to the condemnee's award prior to the passage of bare legal title, held that it was a taking of possession by the condemnor plus substantial change in the character of the property that will effect a divestiture of title. *City of Long Beach* v. *Aistrup*, 164 Cal.App.2d 41 [330 P.2d 282], however, limited this holding only to tax liens attaching subsequent to the date on which physical possession was taken.

These authorities, although not dealing directly with the issue before us, may well be considered for the proposition that the mere issuance of the order of immediate possession does not divest the owner of title, nor in itself constitute a "taking," and whether there is a physical "taking" is a factual question to be decided by the trial court (*People* v. *Joerger*, 12 Cal.App.2d 665 [55 P.2d 1269] ; *People* v. *Peninsula Title Guarantee Co.*, 47 Cal.2d 29 [301 P.2d 1] ; *City of Long Beach* v. *Aistrup*, 164 Cal.App.2d 41 [330 P.2d 282] ). In each of these cases actual physical possession was taken by the condemnor and the owners were completely and physically dispossessed.

The trial court's finding in the instant case that the city did not take physical possession of defendants' building, or any portion thereof, is amply supported by the evidence that defendants have had full use and enjoyment of all portions of the building as it was originally constructed, as an office and except for the two months they voluntarily ceased using the front door, although the structure continued in use, the building has been continuously used by defendants as an office and is presently in full occupancy by them. The condemnation proceeding is presently pending and has never been tried.

Although the effect of the order for immediate possession was to transfer the right to possession to the city of Compton, the record fails to disclose that either physical possession of

the premises was actually taken from defendants or that they have been divested of title thereto. There is nothing about the mere issuance of the order for immediate possession, or what the city did pursuant to the order that would relieve defendants from the responsibility of abating any nuisance created by them in the construction and maintenance of the building in question.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.