[Civ. No. 25947.   First Dist., Div. One.   Aug. 1, 1969.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Respondent, v. COUNTY OF SANTA CLARA et al., Defendants and Appellants.

John R. Kennedy, County Counsel, Ralph F. Long, and Leland D. Stephenson, Deputy County Counsel, for Defendants and Appellants.

Harry S. Fenton, John P. Horgan, Kenneth G. Nellis, William R. Edgar and Donald M. Velasco for Plaintiff and Respondent.

MOLINARI, P. J.—The County of Santa Clara and the county recorder of said county appeal from an order determining that the county stamp tax ordinance does not impose a tax on the recordation of a final order in condemnation proceeding and that the State of California (hereinafter referred to as "the State"), plaintiff and condemnor in this action, is entitled to have the final order recorded without payment of the tax by the condemnee.

The State, by and through the Department of Public Works, brought a condemnation proceeding in which the court entered a final order of condemnation which included a direction that a certified copy of the order be recorded in the office

of the County Recorder of the County of Santa Clara.[1] The recorder refused to record the certified copy of the order because the documentary stamp tax imposed by county ordinance NS-215 had not been paid. The State then moved for an order requiring the recorder to record the certified copy of the order. The trial court found that the recorder had the duty to accept the order for recordation without requiring the payment of the tax by the condemnee on the basis that the ordinance did not impose a tax for the recording of a final order in a condemnation proceeding.

The ordinance does not mention final orders in condemnation proceedings in any context. The language of levy, which is essentially the same as that set out in the enabling legislation provided for in Revenue and Taxation Code section 11911,[2] reads as follows: "There is hereby imposed on each deed, instrument or writing by which any lands, tenements, or other realty sold within the County of Santa Clara shall be granted, assigned, transferred, or otherwise conveyed to or vested in the purchaser or purchasers or any other person or persons by his or their direction . . . , a tax at the rate of 55 cents for each $500.00 or fractional part thereof."[3]

The ordinance further provides that "The United States . . . any state or territory, or political subdivision . . . shall not be liable for any tax imposed pursuant to this ordinance with respect to any deed, instrument or writing to which it is a party, but the tax may be collected by assessment from any other party liable therefor."[4] It also sets out liability for the tax in terms allowed by Revenue and Taxation Code section

---

[1]According to section 1253 of the Code of Civil Procedure: "The title to the property described in the final order of condemnation vests in the plaintiff . . . upon the date that a certified copy of the final order of condemnation is recorded in the office of the recorder of the county."

[2]Revenue and Taxation Code section 11911 reads in pertinent part: "The board of supervisors of any county . . . , by an ordinance adopted pursuant to this part, may impose, on each deed, instrument, or writing by which any lands, tenements, or other realty sold within the county shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers, or any other person or persons, by his or their direction, . . . a tax . . . ."

[3]The basic state-enabling legislation (Rev. & Tax. Code, §§ 11901-11935) was enacted in 1967 and replaced a similar federal tax which expired on January 1, 1968.

It should be noted here that both parties agree that, although the language of the superseded federal statute was identical to the subject state and county law, the federal government never applied the tax to conveyances by condemnation.

[4]This language of exemption is identical to the exemption provided in the enabling legislation. (Rev. & Tax. Code, § 11922.)

11912,[5] as follows: ''The tax imposed . . . shall be paid by any person who makes, signs, or issues any document or instrument subject to the tax, or for whose use or benefit the same is made, signed or issued.'' Both the ordinance and section 11933 provide that the recorder shall not record any instrument subject to the tax unless the tax has been paid. The ordinance provides, further, that the recorder interpret the provisions of the taxing ordinance consistently with the regulations of the federal Internal Revenue Service as they existed on November 8, 1967.

The parties agree that the State as condemnor is clearly exempted from the payment of the tax in question. The trial court did not reach the question of the potential liability of the condemnees. Rather, the court concluded that the final order of the court following a condemnation trial is not a *sale* of realty within the meaning of section 11911 and the companion section of the Santa Clara County ordinance.[6] The court based its conclusion on the fact that the ordinance did not mention final orders in condemnation proceedings and observed, in its order, that ''The court must assume that those who drafted the ordinance were aware of the existence of such orders. . . . It would have been very simple to refer to such orders in clear, unambiguous language.''

The County contends that transfers of realty effected by a court order issued pursuant to an eminent domain judgment are *sales* within the meaning of the state law and the ordinance; that the condemnee is liable for payment of the tax because he is a person for whose benefit the judgment and order are issued; and that the recorder may properly refuse to record the final order if the tax is not paid.

Before undertaking our consideration of the County's contentions it should be noted that it is well established that on appeal where there is presented a question of interpreting a statute, all of the facts being agreed upon, as is the case here, the court has before it a question of law only. (*Estate of Madison,* 26 Cal.2d 453, 456-457 [159 P.2d 630]; *Jones-Hamilton Co.* v. *Franchise Tax Board,* 268 Cal.App.2d 343, 347 [73 Cal.Rptr. 896]; *Aguirre* v. *Southern Pac. Co.,* 232 Cal. App.2d 636, 642-643 [43 Cal.Rptr. 73].) Accordingly, our

---

[5]Unless otherwise indicated, all statutory references hereinafter made are to the Revenue and Taxation Code.

[6]Actually it would seem the court meant that the order was not a deed or other instrument embodying the sale. The tax is on the document, not the *sale.* (See § 11911.)

function is to ascertain the intent of the Legislature so as to effectuate the purpose of the law.[7] (*Select Base Materials, Inc.* v. *Board of Equalization,* 51 Cal.2d 640, 645 [335 P.2d 672].)

We turn first to the question whether a final order of condemnation is an instrument by which "lands, tenements, or other realty sold" is "granted, assigned, transferred or otherwise conveyed, to or vested in, the purchaser." It is clear from the provisions of Code of Civil Procedure section 1253 that title to the condemned property *vests* in the condemnor on the date when a certified copy of the final order of condemnation is recorded in the office of the county recorder, and that such order cannot be made until payment has been made as required by the verdict of the jury or the judgment of the court. (See *Russakov* v. *McCarthy Co.,* 206 Cal. 682, 687 [275 P. 808] ; *Pool* v. *Butler,* 141 Cal. 46, 50 [74 P. 444] ; *Alameda* v. *Cohen,* 133 Cal. 5, 7 [65 P. 127] ; *People* v. *Peninsula Title Guar. Co.,* 47 Cal.2d 29, 33 [301 P.2d 1].) Accordingly, it is apparent that a final order of condemnation is an instrument by which real property is vested in the condemnor.[8]

Adverting next to the question whether transfers of realty effected by a court order issued pursuant to an eminent domain judgment involve a sale within the meaning of the ordinance, we observe that there is ample authority that a transfer of property by eminent domain is a "sale." (See *Pedrotti* v. *Marin County,* 152 F.2d 829, 831; *Torrance Unified School Dist.* v. *Alway,* 145 Cal.App.2d 596, 599-600 [302 P.2d 881] ; 51 Ops.Cal.Atty.Gen. 50, 51; *Hawaiian Gas Products* v. *Commissioner of Int. Rev.,* 126 F.2d 4, 5; *Charleston & W.C. Ry. Co.* v. *Hughes,* 105 Ga. 1 [30 S.E. 972, 976-977, 70 Am.St.Rep. 17] ; *American Creameries Co.* v. *Armour & Co.,* 149 Wash. 690 [271 P. 896] ; *Jackson* v. *State,* 213 N.Y. 34 [106 N.E. 758].)[9] In *Pedrotti, supra,* it was

---

[7] The legislative history of the state enactment provides no substantial clues as to the intent of the Legislature. Independent research reveals no specific extrinsic material as to the intent in reference to condemnation orders. (See also 51 Ops.Cal.Atty.Gen. 50, 52.) As will be noted later, one amendment to the original bill might have some bearing on the question of intent.

[8] Section 1253 of the Code of Civil Procedure provides that the final order of condemnation "shall describe the property condemned, the estate or interest acquired therein, the purposes of such condemnation, . . ."

[9] See also 29 Corpus Juris Secundum, Eminent Domain, section 2, page 780; 26 American Jurisprudence Second, Eminent Domain, section 130, page 789.

noted that a transfer of property by eminent domain is nevertheless a sale even though the transfer was involuntary (p. 831) ; and in *Jackson, supra,* it was observed that condemnation is an enforced sale whereby the state stands toward the owner as buyer toward the seller. (P. 758.) We note, moreover, that neither the ordinance in question nor the enabling legislation limit the applicability of the legislation to "voluntary" as contrasted with "involuntary" sales.

In view of the foregoing we conclude that a final order of condemnation is a type of instrument which is encompassed by the provisions of section 11911, and, therefore, is a taxable instrument within the meaning of the statutes and the ordinance.[10] Accordingly, since the state is not liable for the tax, our inquiry is directed to whether the condemnee is liable for its payment. As noted above, the tax is to be paid by the person "who makes, signs or issues any document or instrument subject to the tax, or for whose use or benefit the same is made, signed or issued." (§ 11912.) Here the court, rather than the condemnee, makes and issues the final order of condemnation as a part of its judicial function in the condemnation proceedings.

The County contends that although the court does make and issue the order vesting the title to the real property in the condemnor, it does so for the benefit of the condemnee because the latter receives the sales price. This is a strained construction in view of the involuntary nature of condemnation proceedings insofar as the condemnee is concerned. It appears to us, moreover, that the final order of condemnation is for the benefit of the condemnor, rather than the condemnee. In eminent domain proceedings the judgment of condemnation is the final judgment pursuant to which the condemnor has the right to take the property upon paying the value thereof as determined by the judgment within 30 days after such judgment,

[10]We note that transfers by condemnation proceedings are not included among the instruments of transfer exempted by the Legislature and the Santa Clara Board of Supervisors. All of the listed exemptions are as follows: instruments given to secure debt; the United States, states, political subdivisions, etc.; instruments involving bankruptcy, reorganization, receivership, or change of identity; instruments required by orders of Securities and Exchange Commission; and partnership transfers under certain conditions. (§§ 11921-11925; Ord. NS-215.)

It should be noted that the original bill introduced (SB 837) actually exempted any transfer to a governmental unit. The fact that the final legislation does not exempt such transfers but only exempts the governmental unit from liability could be construed as indication of intent *not* to exempt condemnation transactions.

or to deposit the same in court. (Code Civ. Proc., §§ 1251, 1252; *Alameda* v. *Cohen, supra,* 133 Cal. 5, 7; *Russakov* v. *McCarthy Co., supra,* 206 Cal. 682, 687.) Before the expiration of 30 days after final judgment the condemnor may abandon the proceedings, and upon proper abandonment, the judgment of dismissal is entered awarding the condemnee his costs and disbursements. (Code Civ. Proc., § 1255a; *Bellflower City School Dist. of Los Angeles County* v. *Skaggs,* 52 Cal.2d 278, 281-282 [339 P.2d 848].) The property condemned does not vest in the condemnor until payment has been made and an order of final condemnation is made and recorded in the office of the county recorder; and it is only *after* payment has been made that the court is required to make a final order of condemnation. (Code Civ. Proc., § 1253; *Alameda* v. *Cohen, supra; Russakov* v. *McCarthy Co., supra.*) When payment is made to the condemnee the judgment has been satisfied as to him, and the only significant purpose of the order of final condemnation is to vest the title in the condemnor.[11] Accordingly, in making such an order the court acts in the exercise of a judicial function for the condemnor's benefit. (See *People* v. *Northcutt,* 171 Cal.App.2d 620, 623 [340 P.2d 1043]; *Los Altos School Dist.* v. *Watson,* 133 Cal.App.2d 447, 450 [284 P.2d 513]; *People* v. *Peninsula Title Guar. Co., supra,* 47 Cal.2d 29, 32.)[12]

In reaching the conclusion that an order of final condemnation is for the benefit of the condemnor, we are not unmindful that this conclusion creates a distinction between the condemnee, who as a grantor makes a voluntary transfer of realty under the threat of condemnation, and thus is liable for the transfer tax, and the condemnee whose property is transferred by virtue of an order of condemnation. We do observe that in the former situation the condemnee is at liberty to bargain for

[11]It should be noted that in many instances the condemnor is already in possession at the time the order of final condemnation is made by reason of an order of immediate possession. (See Code Civ. Proc., §§ 1243.4-1243.7; 1254, and see 7 Santa Clara Law. 37.) The taking of such possession constitutes, in effect, a divestiture for all practical purposes of the condemnee's interest and the subsequent divestiture of title pursuant to Code of Civil Procedure section 1235 is merely a confirmation of the original "taking." (*People* v. *Peninsula Title Guar. Co., supra,* 47 Cal.2d 29, 32.)

[12]We observe, moreover, that in the only case construing the subject language in the superseded federal statute it was held that an instrument coming within the purview of the statute was made for the "benefit" of the vendee rather than the vendor. (*Endler* v. *United States,* 110 F.Supp. 945, 948.) *Endler* did not involve a condemnation proceeding, but a direct sale by the government as vendor. In that case the vendee was held liable for the tax.

the inclusion of the transfer tax in the ultimate sales price, while in the latter situation he is limited to the costs reasonably incurred, in good faith in the defense of the action. (See *City of Los Angeles* v. *Vickers,* 81 Cal.App. 737, 738-741 [254 P. 687]; *Yolo Water etc. Co.* v. *Edmands,* 188 Cal. 344, 347 [205 P. 445]; *Alameda County* v. *Crocker,* 125 Cal. 101, 106 [57 P. 766]; *San Francisco* v. *Collins,* 98 Cal. 259, 262-263 [33 P. 56].) Accordingly, it does not appear that the subject transfer tax is a cost which may be properly allowed to the condemnee in addition to the value of his property. (See *Town of Los Gatos* v. *Sund,* 234 Cal.App.2d 24, 26-27 [44 Cal.Rptr. 181].) In any event, even if it may be argued that the distinction is illogical (see 51 Ops.Cal.Atty.Gen. 50, 51), the argument is one to be addressed to the Legislature.[13]

The effect of the conclusion reached by us is that although the instant order of final condemnation is an instrument subject to the tax provided for in section 11911, the State, for whose benefit the instrument is made, is not liable for the tax pursuant to the provisions of section 11922 which exempts the State from its payment.[14] Since there is no "other party liable therefor" as provided in section 11922, there is no document subject to the tax. Accordingly, since the recorder is proscribed only from recording "any deed, instrument, or writing subject to the tax imposed pursuant to this part, . . ." (§ 11933), he cannot refuse to record the transfer document at the request of the exempt entity where there is no tax due.[15] Therefore, the recorder must record a final order in a condemnation proceeding properly presented to him pur-

---

[13]The State argues that if the condemnee is liable for the tax, the imposition would be unconstitutional because to require a condemnee to pay any portion of his costs reduces the award of just compensation. (See *Heimann* v. *City of Los Angeles,* 30 Cal.2d 746, 752-753 [185 P.2d 597]; *San Francisco* v. *Collins, supra,* 98 Cal. 259, 262; *Yolo Water etc. Co.* v. *Edmands, supra,* 188 Cal. 344, 346; *Sacramento etc. Drainage Dist.* ex rel. *State Rec. Board* v. *Reed,* 217 Cal.App.2d 611, 612 [31 Cal.Rptr. 754]; Cal.Const., art. I, § 14; see also Nichols, Eminent Domain (3d ed.) § 4.109.) It is unnecessary to resolve this constitutional question in the light of the conclusion reached by us that the condemnee is simply not liable for the tax.

[14]It should be noted that section 11922 falls within chapter 3 of the Documentary Transfer Tax Act which is entitled "Exemptions." (§§ 11921 to 11925, incl.)

[15]We note that the Attorney General has opined that the recorder must record the transfer document at the request of the exempt entity irrespective of whether the tax has been collected by the other party liable for it under section 11912. (51 Ops.Cal.Atty.Gen. 58-59.) In view of the conclusion reached by us that there is no other party liable for the tax, we need not reach this question.

suant to the provisions of Code of Civil Procedure section 1253 without the payment of the transfer tax provided for in the subject ordinance.[16]

The order is affirmed.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied August 28, 1969.

---

[16]Section 11932 provides that every document subject to tax which is submitted for recordation ''shall show on the face of the document the amount of tax due. . . .'' It would seem that pursuant to this section where there is no tax due it can be so indicated on the face of the document by an appropriate designation.