[Civ. No. 26852.   Second Dist., Div. Three.   Mar. 24, 1964.]

THE PEOPLE ex rel. THE DEPARTMENT OF PUBLIC WORKS, Plaintiff and Respondent, v. LEON FINK, Defendant and Appellant; COUNTY OF LOS ANGELES et al., Defendants and Respondents.

Thomasset & Thomasset and Alfred Lubin for Defendant and Appellant.

George C. Hadley, Charles E. Spencer, Jr., Elbert E. Hensley, Jr., Robert W. Vidor and Robert E. Reed for Plaintiff and Respondent.

No appearance for Defendants and Respondents.

FILES, J.—The question presented is whether the grantee under a tax deed executed after the state had commenced construction of a highway on the subject property is entitled to compensation in the eminent domain proceeding.

The chronology is as follows: On November 17, 1953, Quality Radio, Inc., acquired title to the subject property. Property taxes for the years 1953 and 1954 were unpaid. On May 24, 1956, Quality Radio was adjudicated a bankrupt. On November 20, 1958, the State Highway Commission adopted a resolution determining that the public interest required the acquisition of the subject property for state highway purposes. On January 12, 1959, this proceeding was commenced to condemn the property. On May 11, 1960, the court made an order for possession, following which the Department of Public Works took possession and commenced construction on June 15, 1960.

On February 20, 1961, the Tax Collector of Los Angeles County deeded the subject property to appellant, presumably as a result of a sale at public auction under Revenue and Taxation Code, section 3691, by reason of the nonpayment of the 1953 and 1954 taxes.

In this eminent domain proceeding neither Quality Radio nor its trustee in bankruptcy appeared. Appellant filed an answer alleging ownership under his tax deed. Los Angeles County, the State Board of Equalization and the State Department of Employment appeared, claiming liens. After a trial the court found that the property had been devoted to a public use prior to the date of appellant's deed, and made an

interlocutory judgment declaring that appellant had no interest in the property and was not entitled to participate in any compensation awarded for the taking. In a subsequent trial the court determined the value of the property and the amounts payable to the three lien claimants, which amounts aggregated more than the value of the property. The final judgment apportioned the amount awarded as between the county, the Department of Employment and the Board of Equalization. Appellant has appealed from the judgment.

It is well settled that when a public body has acquired property for public use, a tax deed issued thereafter is void. In *Smith* v. *City of Santa Monica,* 162 Cal. 221 [121 P. 920], plaintiff sought to quiet title to property upon the strength of a tax collector's deed given in 1908, based upon tax liens for unpaid assessments for the years 1894 and 1895. The City of Santa Monica had brought an action to condemn the property for use as a city park, and had obtained a judgment in 1897. The Supreme Court held that the tax sale to the plaintiff was void.

*People* v. *Chambers,* 37 Cal.2d 552 [233 P.2d 557], involved property which was deeded to the state in 1933 for a public park. At the time the deed was given the property was subject to a lien for unpaid county taxes. In 1939 the property was conveyed by tax deed to Chambers for the delinquent 1933 taxes. The Supreme Court held that the state was entitled to a decree quieting title against Chambers.

In both of the above cited cases the tax deed had been antedated by a formal conveyance to the public body—in the *Smith* case by a judgment in condemnation, and in the *Chambers* case by a deed. The critical event, however, is not the formal conveyance, but the act of the sovereign in taking the property for a public use.

*People* v. *Peninsula Title Guar. Co.,* 47 Cal.2d 29 [301 P.2d 1], was a condemnation for highway purposes. The trial court made an order for immediate possession, following which the state entered and commenced construction. Thereafter, but prior to judgment, the City of San Mateo levied an assessment lien upon the property. The Supreme Court held the lien to be void. After a review of authorities, the court said: "It should be clear from the foregoing that a distinction is drawn between the legal effect of passage of title and the 'taking' of the property involved. There is no passage of title in condemnation proceedings until an award has been made and the final judgment in condemnation filed in the

office of the county recorder. (Code Civ. Proc., § 1253; *Metropolitan Water Dist.* v. *Adams,* 16 Cal.2d 676 [107 P.2d 618].) However, as an exception to the strict application of the law, it is recognized that a 'taking' of sufficient consequences is deemed to have the same effect of finality of transfer for specific purposes as does the passage of title." (47 Cal.2d at p. 33.)

One of the cases quoted with approval in the *Peninsula Title* case is *People* v. *Joerger,* 12 Cal.App.2d 665 [55 P.2d 1269]. That was also a highway condemnation in which the state took immediate possession under an order of court. Between the date of possession and the date of judgment a bank, as holder of a deed of trust, caused the property to be sold at a trustee's sale, at which the creditor bank was the successful bidder. The trial court awarded compensation to the bank. The Joergers, as the former owners, appealed and the judgment was reversed upon the ground that the Joergers, not the bank, were the owners at the time the property was taken for a public use. The court said: "In the ordinary proceeding the property is not 'taken' until the final decree is entered. (Code Civ. Proc., § 1253.) It is the divesting of the title of the owner and the vesting of the title in the condemnor which constitutes the 'taking' in such cases. But where, as under *our* Constitution, provision is made for a 'taking' prior to the divestiture of title, the party who owns the property at the time of such 'taking' is entitled to the compensation, under the universal rule found in Corpus Juris, and to which we have referred." (12 Cal.App.2d at pp. 670-671.)

In the light of the foregoing authorities, the subject property was taken by the state and devoted to a public use when highway construction was commenced on June 15, 1960, and the authority of the tax collector to sell the land and give a deed was terminated.

Appellant's brief poses the question, "Can the State of California question the validity of its own tax deeds?" The question erroneously speaks of the state as though it were an individual dealing with private property. In this case the People of the State of California, through the Department of Public Works, are questioning the validity of a tax deed given by the Tax Collector of Los Angeles County. The tax collector has no authority to deed away a part of a state highway. The state is entitled to challenge the effect of such a deed, as the Supreme Court held in the *Smith* and *Chambers* cases cited above.

■ Appellant poses a second question: "Can a tax deed on a contest by the State of California be invalidated without tendering to the purchaser of tax title the taxes so paid by him?" The Supreme Court pointed out in the *Chambers* case that the statutory provisions relating to repayment to the purchaser when his tax deed is set aside for the benefit of a private party have no applicability to the state.

Revenue and Taxation Code, section 3730, provides: "The purchaser of tax-deeded property is entitled to a refund of the amount paid as purchase price whenever it is determined by the board of supervisors that the property belongs to the United States, this State, a city, or other political subdivision of this State and should not have been sold for taxes. The refund shall be made in the same manner as a refund of an overpayment of tax."

The *Chambers* opinion points out that if the purchaser is entitled to a refund he must apply to the county under that section. (37 Cal.2d at pp. 561-562.) ■ Since he did not acquire an interest in the subject property, he is not entitled to participate in the fund awarded by this eminent domain proceeding.

Appellant asserts in his reply brief that the order for immediate possession did not provide for a deposit as security, as is required by Code of Civil Procedure, section 1243.5, and as contemplated by article I, section 14, of the state Constitution. The text of the order is not in the record and appellant's argument lacks any factual support in the record. It is therefore unnecessary to consider whether the failure to make a deposit, if there was such a failure, would make any difference.

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.