[Civ. No. 35938. Second Dist., Div. One. Sept. 28, 1970.]

CITY OF INDUSTRY, Plaintiff and Respondent, v.
ARTHUR V. WILLEY et al., Defendants and Respondents;
REFUSE DISPOSAL CORP., Defendant and Appellant.

**COUNSEL**

Garber & Garber, O'Neill, Huxtable & Coskran and Francis H. O'Neill for Defendant and Appellant.

Graham A. Ritchie, City Attorney, and Richards, Watson & Hemmerling for Plaintiff and Respondent.

William P. Willman for Defendants and Respondents.

**OPINION**

**LILLIE, Acting P. J.**—Defendant Refuse Disposal Corp. appeals from a judgment in condemnation whereby it was determined that it had no compensable interest in the property condemned by plaintiff City of Industry. This determination was reached at an interim trial (Code Civ. Proc., § 1246.1) conducted pursuant to pretrial conference order; therein the trial court found that subsequent to the institution of the within eminent domain action, Refuse Disposal had voluntarily and unilaterally terminated its lease of the premises, such leasehold interest (for the operation of a rubbish dump) being the basis of its claim to a portion of the award. Accordingly, it was adjudged and decreed that the sum fixed as just compensation for the taking be paid into court for the benefit of defendants Willey and Pearson, the owners (and former lessors) of the parcel involved.

Although the within action was commenced on August 9, 1968, summons did not issue until January 27, 1969, some two and one-half months before appellant's termination of the lease. It is first contended that since the right to damages shall be deemed to have accrued at the date of issuance of summons (Code Civ. Proc., § 1249), appellant's claim to compensation should have been based on the condition of the lease at that time (January 27, 1969) regardless of what transpired thereafter, citing *Sacramento etc. Drainage Dist.* v. *Truslow*, 125 Cal.App.2d 478, 488 [270 P.2d 928, 271 P.2d 930]. Second, since it is held in *People* ex rel. *Dept. of Public Works* v. *Hartley*, 214 Cal.App.2d 378 [29 Cal.Rptr. 502], that a lessee whose interest is not interfered with by the condemner is not entitled to share in

the award, appellant points to certain actions and activities constituting such interference which distinguish its case from *Hartley* and warrant an order remanding the matter for further proceedings to determine appellant's interest in any compensation awarded. In this latter connection it is argued that appellant's termination of the lease was not voluntary; to the contrary, further operation of the rubbish disposal facility (as stated in the notice of termination) assertedly became impossible due to "frustration by Governmental intervention," even though the lease had approximately 14 more years to run.

*Hartley* recognizes that the normal date for the ascertainment of damages is fixed by Code of Civil Procedure, section 1249, nevertheless, quoting from *Los Angeles County Flood Control Dist.* v. *Andrews*, 52 Cal.App. 788, 793 [205 P. 1085], the court pointed out that " 'the rule that damages are to be assessed in condemnation cases as of the date of the issuance of summons relates only to property actually taken. An anomalous and unbearable condition would be presented if, under that rule, the public could be required to pay for a leasehold interest not taken, but which the lessee held unmolested to the end of the term. . . .' " (214 Cal.App.2d at p. 380.) In the instant situation, unlike that in *Sacramento etc. Drainage Dist.* v. *Truslow* (relied on by appellant in support of its first point), no order for immediate possession was sought, or even applied for, nor was possession taken. Further unlike the case at bar, in *Truslow* the lessee was required to, and did, install certain valuable improvements on the farming land therein involved; since the lessee had lost the use of such improvements for the remainder of the term (four years), it was held on appeal that the trial court properly apportioned the award between lessor and lessee even though the latter, subsequent to the issuance of summons, had both assigned his interest to a third person and defaulted in payment of rent (for which default the lessor had declared the lease forfeited).

The trial court's attention having been directed to *Truslow,* appellant's counsel was asked at the outset whether his client contended that there were improvements of any real value on the leased premises, to which counsel (Mr. O'Neill) replied: "I am not prepared to say, sir, that there have or have not been improvements at this time. I would advise the Court, however, that it is my understanding that this is a trial on the issue of whether we have an interest in the property as represented by the lease. THE COURT: Under 1248(b) [*sic*].[1] MR. O'NEILL: Yes. THE COURT: For example, you rely on the recent concrete company case

---

[1]Section 1248b, Code of Civil Procedure, provides: "Equipment designed for manufacturing or industrial purposes and installed for use in a fixed location shall be deemed a part of the realty for the purposes of condemnation, regardless of the method of installation."

[*Concrete Service Co.* v. *State of California,* 274 Cal.App.2d 142 (78 Cal.Rptr. 923)]—MR. O'NEILL: That's right. THE COURT:—and the cases cited therein. MR. O'NEILL: Yes, I rely. THE COURT: The contention in those cases, where the lessee had an interest by reason of the improvement, there wasn't any contention that there was any market value of the lease owned." After further colloquy, the court asked this question: "THE COURT: Isn't the key to the whole thing the fact there was an involuntary surrender? MR. O'NEILL: That's right, and that is our contention here."

Although appellant thereafter did not completely abandon its claim that the *Truslow* and *Concrete Service* decisions support its contention that compensation should be paid for the bare possessory interest in the property exclusive of any improvements, as of the statutory date of valuation, we are persuaded that the principles declared in *People* v. *Hartley, supra,* control the outcome of this appeal. Indeed, obviously with *Hartley* in mind, there is this statement in appellant's opening brief: "In summary, where a leasehold interest is taken the tenant is entitled to compensation for the value of the property rights in the property which he had at the date of issuance of summons. If, however, his rights are not interferred [*sic*] with and the lease expires according to its terms, prior to the consummation of the action he is *not* [italics added] entitled to compensation for the loss of that interest. *Conversely, however, if there is interference he is entitled to compensation.*"

As noted earlier, appellant contends that there was such interference, principally on the part of the condemner, which compelled the notice of termination transmitted to the lessor on April 17, 1969; that being so, and contrary to the trial court's finding in that regard, the termination was not voluntary and accordingly, as of the time of the interim trial, it had (and still has) a compensable interest in the property condemned. Certain of the city's activities are referred to in the notice of termination, specifically the adoption in January 1968, of an ordinance (No. 281) requiring a permit and a quarterly license fee of $1,500 for the operation of a waste disposal facility, and the filing in December of 1968 of a lawsuit by the city which sought an injunction prohibiting any dumping operations on the premises leased. In its brief, mention is made of still other activities, namely, the enactment in August 1968 of still another city ordinance (No. 296) providing for an inspection fee and other charges with respect to garbage and rubbish dump operations and, also, the institution of the present action in eminent domain. At the interim trial, although admonished by the court to do so, appellant declined to produce any evidence that the above activities factually and improperly

interfered with its enjoyment of its possessory interest as lessee; instead, as correctly contended by respondents, we are asked to hold that these activities as a matter of law compelled appellant to terminate its lease. This, for reasons stated below, we cannot do.

With respect to the two ordinances, there is a presumption that official duty has been regularly performed (Evid. Code, § 664). ■ "In passing on the validity of an ordinance or a statute it will be presumed that it is valid. He who would claim that it is invalid must assume the burden of showing its invalidity." (*Hopkins* v. *Galland Mercantile Laundry Co.,* 218 Cal. 130, 133-134 [21 P.2d 553].) ■ Further with respect to a municipal ordinance, "Every intendment is to be indulged in favor of its validity, and . . . the court must, in deference to the legislative act, adopt the construction which will give effect to the obvious legislative purpose." (*Cuthbert* v. *Woodman,* 185 Cal. 43, 45 [195 P. 673].) ■ Despite the absence of any evidence in support thereof, appellant nevertheless states in its brief that the fees required by the two ordinances were exorbitant and "rendered the continued operation [of its facility] onerous." It will suffice to observe that such conclusional assertions cannot supply the deficiency resulting from appellant's failure to assume the burden of showing that there is some substance to the grievance claimed.

■ There is similarly no merit to the contention that the filing by the city of two lawsuits unduly and improperly interfered with appellant's operation. With respect to the instant proceeding, again no evidence was produced of any interference with the rubbish dump operations and, as noted earlier, no order of immediate possession was ever obtained. With respect to the injunction suit, upon the filing of the complaint therein the defendant (appellant here) was ordered to show cause why a pre-liminary injunction should not issue; prior to the return date, however, it appears that defendant (through certain of its present counsel) filed a stipulation that a preliminary injunction could issue as prayed. True, as appellant points out, the stipulation provided that the adjudication of the ultimate rights in the controversy was expressly reserved until joinder of issues by the filing of an appropriate response by defendant corporation; and it is likewise true that in passing upon the propriety of the issuance or dissolution of a preliminary injunction an appellate court will not determine the merits of the case in advance of the trial. (*Paul* v. *Allied Dairymen, Inc.,* 209 Cal.App.2d 112, 121 [25 Cal.Rptr. 595].) But it has also been stated, with respect to the issuance of a preliminary injunction, that "An injunction should rarely, if ever, be issued in a doubtful case. The power should be exercised only when the right is clear, the injury impending and threatened, so as to be averted only by the protecting preventive process of injunction. [Citation.]" (*McPheeters* v.

*McMahon,* 131 Cal.App. 418, 425 [21 P.2d 606].) In such circumstances, appellant does not (and could not) contend that the injunction action was commenced in bad faith; instead, it asserts that the *Hartley* case, as it deals with interference by the condemning authority, does not require proof of malice or fraudulent intent. Such argument is patently unsound; were it held tenable, a lessee (such as appellant) could invite governmental interference by means of matters outlined in the injunction action and then seek the assistance of the *Hartley* case in any subsequent claim for just compensation due to the interference thus invited. To state the proposition is to answer it.

Finally, as noted in one of the colloquies at the interim trial, appellant relies on the *Concrete Service* case (*Concrete Service Co. v. State of California,* 274 Cal.App.2d 142 [78 Cal.Rptr. 923]); two other decisions are also cited and said to be controlling: *Redevelopment Agency v. Diamond Properties,* 271 Cal.App.2d 315 [76 Cal.Rptr. 269], and *City of Los Angeles v. Sabatasso,* 3 Cal.App.3d 973 [83 Cal.Rptr. 898]. None of the above cases deals with compensation for a leasehold under section 1246.1, Code of Civil Procedure; instead, they were concerned with compensation for industrial equipment located on the property when the condemnation proceedings were commenced (Code Civ. Proc., § 1248b, *supra*) and, as already made clear, no industrial equipment is involved in the instant proceeding. Furthermore, none of the three cases even suggests that they are changing the rule of *Hartley* that a tenant whose leasehold interest is not interfered with is not entitled to share in the award; rather, they stand for the proposition that the condemner may not, by such devices as purchasing the interest of the landowner, deprive the lessee of his statutory right to compensation for his industrial equipment even though his possessory interest in the land is terminated. On the other hand, here there is no evidence of any arrangement between the lessor and the city to transfer land to the city and thus deprive the lessee of compensation for equipment, there being no such equipment on the property. In short, the circumstances at bar in no way parallel those found in the trio of decisions above cited; the latter being distinguishable, they are not controlling here.

The judgment is affirmed.

Thompson, J., and Gustafson, J., concurred.