[Civ. No. 1644. Fifth Dist. Feb. 20, 1974.]

THE PEOPLE EX REL. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Appellant, v.
SIMON NEWMAN COMPANY, Defendant and Appellant.

## Counsel

Harry S. Fenton, John P. Horgan, William C. DeMartini, Harry C. Miller and William R. Edgar for Plaintiff and Appellant.

C. Ray Robinson, William T. Ivey, Jr., Ronald H. Marks and William F. Cook for Defendant and Appellant.

## Opinion

**BROWN (G. A.), P. J.**—The condemner and the condemnee have each appealed from a judgment in condemnation after a trial before the court without a jury.

The action was commenced by the State of California on behalf of the Department of Water Resources to acquire a right of way for the California Aqueduct and on behalf of the Department of Public Works to acquire a right of way for the construction of the Interstate 5 freeway. The segments of those projects involved in this action were sought to be acquired from large ranch holdings of the Simon Newman Company, a corporation (hereinafter Newman corporation) located in westerly Stanislaus and Merced Counties. Attached as Appendix 1 is a modified portion of an exhibit from the proceedings which will assist in a ready understanding of the location and layout of the improvements as they relate to the parcels of property being taken and affected insofar as they pertain to the issues raised on these appeals.

The relevant chronology is this:[1]

| | |
|---|---|
| Original complaint filed, summons issued and lis pendens recorded | November 21, 1962 |
| Order authorizing immediate possession | February 15, 1965 |
| Trial commenced | January 4, 1968 |
| Final order of condemnation | July 17, 1968 |

It was stipulated that the date of trial (January 4, 1968) would be the valuation date. (Code Civ. Proc., § 1249.)[2]

---

[1]There were several amended pleadings and other orders authorizing possession. The dates stated are the ones relevant to the issues raised on this appeal.

[2]Code of Civil Procedure section 1249 provides: "For the purpose of assessing compensation and damages the right thereto shall be deemed to have accrued at the date of the issuance of summons and its actual value at that date shall be the measure

With reference to the freeway, and aside from the value of the "take" which is not here in controversy, the court found severance damages (Code Civ. Proc., § 1248, subd. 2) in the sum of $69,342 and special benefits (Code Civ. Proc., § 1248, subd. 3) in the sum of $136,450 and offset the special benefits against the severance damages. The special benefits were assessed because of the creation of freeway service station sites on the four quadrants created by the interchange at the freeway and Sullivan Road (hereinafter the interchange properties). (See Appendix 1.)

Regarding the aqueduct, severance damages in the sum of $28,371 were awarded. There were no benefits assessed.

On August 31, 1955 (recorded Sept. 27, 1955) Newman corporation entered into an agreement (hereinafter "excess lands contract") with the United States Department of the Interior, Bureau of Reclamation, pertaining to the disposition of certain "excess" lands owned by the Newman corporation. The excess land contract permitted the Newman corporation to receive irrigation water from the federally financed Delta-Mendota canal (see Appendix 1) for a period of 10 years for lands it owned in excess of 160 acres in return for the corporation's agreement to dispose of such excess lands within 10 years after entering into the contract. (Act of June 17, 1902, ch. 1093 (32 Stats. 388).) Included in the described excess lands were the parcels which have been darkened on Appendix 1, which, as will be noted, encompass the interchange properties, the special benefits to which were valued in these proceedings at $136,450.

Pursuant to the same contract, Newman corporation did in fact sell all of the excess land described in the contract—except the land condemned for the freeway and aqueduct—on August 25, 1965, including the interchange properties, to Simon Newman Company, Ltd., a limited partnership (hereinafter Newman partnership).[3]

Under the contract, the price at which the excess land could be sold was to be at its fair market value without regard to any increase in value

of compensation for all property to be actually taken, and the basis of damages to property not actually taken but injuriously affected, in all cases where such damages are allowed as provided in Section 1248; provided, that in any case in which the issue is not tried within one year after the date of the commencement of the action, unless the delay is caused by the defendant, the compensation and damages shall be deemed to have accrued at the date of the trial. No improvements put upon the property subsequent to the date of the service of summons shall be included in the assessment of compensation or damages."

[3]Eighty percent of the limited partnership is owned by one-third of the shareholders of Newman corporation, representing 70 percent of the shares of the corporation.

thereof attributed to the existing of prospective availability or water service from the Delta-Mendota canal.[4]

In the case at bench, the sales price of the excess land was fixed by a single federal appraiser and the values arrived at were introduced in evidence. In addition to the appraiser's report, the values were listed on a single sheet summary as being "AGREED VALUES OF LAND AND IMPROVEMENTS. . . ." The price fixed for the interchange properties was $21,680. The three-appraiser procedure authorized by paragraph 3 (see fn. 4) was not invoked by the Newman corporation and no reappraisal pursuant to paragraph 7 was requested (see fn. 4). It is clear, however, from the appraisal report that in fixing the value the appraiser purported to take into consideration the potential commercial use of the interchange properties by reason of the construction of the freeway.

■ Newman corporation's sole contention in this appeal is that since, pursuant to the excess lands contract entered into before the commencement of the action, it had agreed to dispose of the properties found to be benefited, and since it did in fact dispose of those lands prior to the trial and valuation date, the court erred in offsetting special benefits found to exist as of the trial date against severance damages. In other words, since it did not own the interchange properties on the date of valuation, it was error to assess the benefits attributable to those properties against the award of severance damages.

Because the date of valuation is the trial date (Code Civ. Proc., § 1249, see fn. 2), we must determine if the existence and extent of the larger

---

[4]In this regard, paragraph 3 of the excess land contract provides in pertinent part: "At the option of the Landowner, however, the said value may be determined, subject to the approval thereof by the Secretary, by three appraisers, one designated by the United States, one designated by the District, and the third designated by the first two, or upon their failure to agree by the presiding Justice of the Third District Court of Appeals of the State of California. Said excess land shall be appraised at its fair market value, but in the appraisal, no value shall be given such land on account of the existing or prospective availability of water or service from the Central Valley Project."

Also paragraph 7 of that contract states in part: "If an appraisal has been made pursuant to article 3 prior to the sale of the land described in article 2 of this agreement, either the Landowner or the United States may require that said land or any part thereof be again appraised at any time prior to the sale thereof, and such appraisals shall be made as provided in article 3 hereof. . . . The value established by any new appraisal shall supersede the value established by the existing appraisal on the date of the receipt of a registered letter to the Landowner notifying it of said new appraisal."

See 43 United States Code section 423e which requires the sales price to be fixed on the basis of its actual bona fide value.

parcel to be benefited under Code of Civil Procedure section 1248, subdivision 3, is to be determined as of the date of the trial or as of an earlier date.

In substance, Code of Civil Procedure section 1249 provides that "[f]or the purpose of assessing compensation and damages the right thereto shall be deemed to have accrued at the date of the issuance of summons . . . ," except that when the cause is not brought to trial within one year "the compensation and damages shall be deemed to have accrued at the date of the trial." This section is a procedural section (*City of Los Angeles* v. *Tower* (1949) 90 Cal.App.2d 869, 872, 874 [204 P.2d 395]) enacted to give condemning authorities an incentive to proceed to trial without undue delay. (*People* v. *Murata* (1960) 55 Cal.2d 1, 6 [9 Cal.Rptr. 601, 357 P.2d 833].) By the precise terms of the statute, it applies only " '[f]or the purpose of assessing compensation and damages. . . .' " Accordingly, this section has been held to be concerned only with the time of determining the *amount of compensation* once the *right* to compensation (and thus the liability for special benefits) has been established. (*City of Stockton* v. *Bascou* (1970) 12 Cal.App.3d 983, 987 [91 Cal.Rptr. 223]; see also *State of California* ex rel. *Dept. Water Resources* v. *Clark* (1973) 33 Cal.App.3d 463, 467 [109 Cal.Rptr. 39]; *Redevelopment Agency* v. *Diamond Properties* (1969) 271 Cal.App.2d 315, 320 [76 Cal.Rptr. 269].) These and other cases make clear that Code of Civil Procedure section 1249 is concerned with the value of the property condemned once the right to compensation has been established. The determination of ownership, larger parcel, severance damages and special benefits is established as of the time the summons is issued and mandatory lis pendens filed. (Code Civ. Proc., §§ 1243, 1244; *People* v. *Klopstock* (1944) 24 Cal.2d 897, 902 [151 P.2d 641]; *People* ex rel. *Dept. Pub. Works* v. *Bond* (1964) 231 Cal.App.2d 435, 439 [41 Cal.Rptr. 900, 13 A.L.R.3d 1142]; *People* ex rel. *Dept. of Public Works* v. *City of Fresno* (1962) 210 Cal.App.2d 500, 508 [26 Cal.Rptr. 853]; *City of Los Angeles* v. *Blondeau* (1932) 127 Cal.App. 139 [15 P.2d 554]; cf. *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345].) The rule obtains regardless of whether the property is subsequently transferred to another (*City of Los Angeles* v. *Ricards* (1973) 10 Cal.3d 385, 389 [110 Cal.Rptr. 489, 515 P.2d 585], and cases therein cited) subject, of course, to rights established by agreements between the transferor and transferee.

Thus the condemner, upon causing the issuance of the summons describing the parcels to be taken and the parties and interests therein and the filing of the lis pendens, need not be concerned from that date forward

during the pendency of the action with transfers and transactions affecting the parcels. Such transfers and transactions are with notice of and subject to the outcome of the action and with knowledge of the influence that the pendency of the action may have upon the value of said parcels, if any.

Consonant with this scheme of procedure is Code of Civil Procedure section 1246.1, providing for a bifurcated trial.[5] As set forth therein, the condemner is entitled to have the amount of the award for said property first determined as between the condemner and the condemnees for all of the interests in each parcel in one lump sum; thereafter, in the same proceeding, the respective rights of the condemnees in the award are determined and apportioned accordingly, the condemner not normally being involved in the second phase.

It is in this second phase of the bifurcated proceedings to determine the interests in a condemnation award between the condemnees, their lessees and successors in interest, *inter se,* where the courts have stated the property is "taken" as of the date the condemner takes possession pursuant to article I, section 14 of the California Constitution and Code of Civil Procedure section 1243.5. (See *Brick* v. *Cazaux* (1937) 9 Cal.2d 549 [71 P.2d 588]; *Security Co.* v. *Rice* (1932) 215 Cal. 263, 266 [9 P.2d 817, 82 A.L.R. 1059]; *People* ex rel. *Dept. of Water Resources* v. *Gianni* (1972) 29 Cal.App.3d 151, 155 [105 Cal.Rptr. 248]; *City of Industry* v. *Willey* (1970) 11 Cal.App.3d 658 [89 Cal.Rptr. 922]; *People* ex rel. *Dept. of Public Works* v. *Hartley* (1963) 214 Cal.App.2d 378, 380-381 [29 Cal. Rptr. 502]; *People* v. *Joerger* (1936) 12 Cal.App.2d 665, 668-671 [55 P.2d 1269]; *Towne* v. *City of Los Angeles* (1935) 4 Cal.App.2d 418, 420 [41 P.2d 363].) Like pronouncements are found in cases determining the responsibility of the owner to pay involuntary tax liens from condemnation awards where such liens attach subsequent to the taking of possession (see *People* v. *Peninsula Title Guar. Co.* (1956) 47 Cal.2d 29, 32 [301 P.2d 1]; *People* ex rel. *Dept. Pub. Wks.* v. *Fink* (1964) 226 Cal.App.2d 19, 20-22 [37 Cal.Rptr. 724]; cf. *City of Ontario* v. *Kelber* (1973) 35 Cal. App.3d 751, 753-755 [111 Cal.Rptr. 222]).

---

[5]Code of Civil Procedure section 1246.1 provides: "Where there are two or more estates or divided interests in property sought to be condemned, the plaintiff is entitled to have the amount of the award for said property first determined as between plaintiff and all defendants claiming any interest therein; thereafter in the same proceeding the respective rights of such defendants in and to the award shall be determined by the court, jury, or referee and the award apportioned accordingly. The costs of determining the apportionment of the award shall be allowed to the defendants and taxed against the plaintiff except that the costs of determining any issue as to title between two or more defendants shall be borne by the defendants in such proportion as the court may direct."

However, those cases have no particular relevancy to the issue now before this court dealing with the rights between the condemning agency and the condemnee and not with the rights as between the condemnees *inter se*. As to rights involved in the case at bench, the delineation of the parcels involved (including the larger parcel), the parties and their interests therein are fixed as of the date the action is commenced, the summons is issued and the lis pendens is recorded.

It seems apparent that the adoption of the theory advanced by the Newman corporation—that the extent of the larger parcel and the ownership thereof should be determined as of the trial date when that is the date of valuation—would be violative of the general principles and procedures we have described and would as well create numerous practical problems. For example: (1) It would permit destruction of the doctrine of special benefits by authorizing condemnees to convey portions of their property that would otherwise be specially benefited pending the action and by conveyances landlock other portions of the remainder so as to maximize their severance and minimize or eliminate special benefits. (2) Such a rule would require a condemning agency during the pendency of the action to closely follow all transactions with reference to the parcels being condemned and to join in the action those who acquire interests up to the date of trial. (3) It would involve the condemner in controversies between the condemnees. (4) It would diminish the benefit from the intended legal effect of a lis pendens. (See Code Civ. Proc., §§ 409, 1243.)[6]

*East Bay Mun. Utility Dist.* v. *Kieffer* (1929) 99 Cal.App. 240 [278 P. 476], relied upon by Newman corporation, is distinguishable. In that case the defendant owned two large noncontiguous parcels, one of which was condemned. The defendant also owned an option to purchase a small piece of property connecting the two larger tracts, which he exercised before the date of trial. He contended at trial that he was entitled to severance damages based on a larger parcel consisting of all his holdings. The court held severance damages were not permissible because the cause was brought to trial within one year of the issuance of the summons and therefore the date of issuance of the summons was a relevant date in determining valuation, and thus the issue of the larger parcel. (Code Civ. Proc., § 1249, *supra.*) The holding is correct on the facts. Newman corporation, however, attempts to draw the implication from the case that had the date

---

[6]We also note that in the present case Newman corporation was awarded severance damages for lands conveyed to the Newman partnership, including the interchange properties involved herein. Clearly, if their argument were to be accepted, we would be impelled to reverse the judgment with directions to deduct therefrom the severance damages so awarded.

of valuation been the trial date, all components which enter into assessing compensation—including the existence and extent of the larger parcel—would be determined as of the trial date. It appears to us that any language in that case that may be so construed is dicta, and insofar as it may not be we decline to follow such a conclusion as being contrary to well established principles we have hereinabove set forth.

 Newman corporation further argues that the purpose of the offset rule is to prevent the condemnee from obtaining an ascertainable windfall at the expense of the taxpayer and that that result would not occur here since the corporation sold the interchange properties to the partnership for only $21,860, whereas the court found benefits flowing to the same property in the sum of $136,450. Newman corporation also argues that since it was bound by the excess land contract entered into well prior to the commencement of the condemnation suit to sell the interchange property at a price well below the amount by which the property was found to be benefited, to offset special benefits which it can never receive violates article I, section 14 of the California Constitution requiring that it be paid just compensation.

The answer to both of these approaches lies in the fact that the excess land contract did not obligate the Newman corporation to sell the interchange property for $21,860; it obligated it to sell the property at the full fair market value, with built-in protection provided by three appraisers and additional reappraisals (see fn. 4), none of which procedures, designed for the protection of Newman corporation, were followed or invoked by it. Instead it agreed upon a price of $21,860, arrived at by a single government appraiser, which purportedly included the potential commercial value of the interchange property. While we are not free to speculate as to any precise reason for the corporation and the limited partnership agreeing to such a low price, given the close relationship between the seller and the buyer (see fn. 3), and the absence of any effort to invoke the protective appraisal provisions of the excess land contract and the absurdly low price agreed to, the trial court was and we are free to conclude that there was some conscious motivation to sell the property well below the true market value. We cannot conclude as a matter of law, therefore, that the Newman corporation would not receive a windfall if the offset was not applied or that it is not receiving just compensation for its property. Newman corporation was in a position to obtain benefits with which it was charged by simply demanding from the Newman partnership the fair market value of the property which it sold. Indeed, it was under a duty to take all reasonable steps to minimize its loss. (*Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250, 269 [42 Cal.Rptr. 89, 398 P.2d 129].)

*City of Santa Barbara* v. *Petras* (1971) 2 Cal.App.3d 506 [98 Cal.Rptr. 635], relied upon by Newman corporation, is easily distinguishable. In that case the improvements for which the condemning agency was held liable, though placed upon the property after the commencement of the action, were so placed pursuant to a binding lease contract that was in existence and entered into prior to the commencement of the suit. The defendant owner was required to accept the improvements placed on the property by the lessee under the lease contract as part of the rent obligation. Accordingly, there was no way the condemnees could be made whole and receive just compensation except by requiring the condemning agency to pay for the value of the improvements. Here, however, Newman corporation was entitled under their contract to receive the full market price of the lands conveyed. That it elected not to do so is immaterial.

■ The condemner contends upon its appeal that the special benefits occasioned by the freeway construction should be offset against the severance damages incident to the aqueduct construction.

Code of Civil Procedure section 1248 authorizes severance damages (subd. 2) and benefits (subd. 3) to be assessed for "the construction of *the* improvement" in the manner proposed by the condemner. That section does not authorize the offsetting of damages and benefits between distinct and separate projects of improvement simply because the condemning agency has, for its own convenience, joined such separate projects in one action.

Indisputably, aside from being joined in the same action, these projects were separate and distinct. No interrelation between the projects has been shown, it appearing that one is wholly independent of the other. One was acquired for and was to be operated by the State Department of Water Resources to convey water and the other for the Department of Public Works for highway use. Moreover, the California Aqueduct right of way acquisition is 100 percent state financed, while the freeway is 90 percent federally financed. (See *United Cal. Bank* v. *People* ex rel. *Dept. Pub. Wks.* (1969) 1 Cal.App.3d 1, 8-10 [81 Cal.Rptr. 405]; *People* ex rel. *Dept. Public Works* v. *Fair* (1964) 229 Cal.App.2d 801 [40 Cal.Rptr. 644].)

*People* v. *Chevalier* (1959) 52 Cal.2d 299, 307-308 [340 P.2d 598], cited and relied upon by the condemner, is not inconsistent with this conclusion. In that case the entire freeway improvement, including the access route, was a single project, while here there are two separate and wholly unrelated projects.

■ Lastly, the condemner urges that the development of a gravel pit

on and purchase of gravel from Newman corporation's land for use in the construction of the California Aqueduct constituted a special benefit which should have been offset against the severance damages caused by the construction of the aqueduct.

We have concluded that the trial court properly refused to assess this as a special benefit.

Approximately 755,000 tons of gravel were taken from the Garza Creek area (see Appendix 1), for which the state paid Newman corporation between $70,000 and $75,000.

Special benefits are defined as those increases in value to the benefited land which ". . . result from the mere construction of the improvement, and are peculiar to the land in question." (*Beveridge* v. *Lewis* (1902) 137 Cal. 619, 624 [70 P. 1083]; *People* ex rel. *Dept of Pub. Wks.* v. *Giumarra Farms, Inc.* (1971) 22 Cal.App.3d 98, 103 [99 Cal.Rptr. 272].) The evidence fully supports the trial judge's factual finding that the gravel could have been obtained from any number of sources in the immediate vicinity, and thus the benefit accruing to the Newman corporation was not "special."

Furthermore, assuming the aqueduct construction generated the demand necessitating the development of the gravel pit, the benefits accruing thereby would not be legally assessable as a special benefit. Special benefits have traditionally been limited to increases in value that occur after the construction and incident to the public use of the improvement, which concept comports with the definition of special benefits as those which result from "mere construction of the improvement." (See *Beveridge* v. *Lewis, supra,* 137 Cal. 619, 623-624; *People* ex rel. *Dept. of Pub. Wks.* v. *Giumarra Farms, Inc., supra,* 22 Cal.App.3d 98, 103; Comment, *Benefits and Just Compensation in California* (1969) 20 Hastings L.J. 764, 766-767, 768 fn. 27.)

The judgment is affirmed.

Franson, J., and Thompson, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

**T.8S., R.8E.**
SCALE: 1" = 2000'

APPENDIX 1

EDITOR'S NOTE: *Diagram photographically reduced for publication purposes.*